UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

| | |
|---|---|
| **LAFONDA PAGE** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| **V.** | )     **Case Number:  3:21cv00462** |
| | ) |
| **RICHMOND REDEVELOPMENT AND** | ) |
| **HOUSING AUTHORITY** | ) |
| | ) |
| **Defendant** | ) |

## VERIFIED COMPLAINT

COMES NOW, Plaintiff, Lafonda Page, by counsel, and as for her Verified Complaint against Defendant Richmond Redevelopment and Housing Authority, she alleges as follows:

## PRELIMINARY STATEMENT

1.  In this action Plaintiff, LaFonda Page (hereinafter, "Plaintiff"), a long-time public housing tenant in Richmond, seeks declaratory relief, injunctive relief, and damages for Defendant's Richmond Redevelopment and Housing Authority's (hereinafter, "Defendant" or "RRHA"), unlawful decision to deny Plaintiff's application for a Section 8 Housing Choice Voucher (hereinafter, "HCV"). RRHA is the city of Richmond's only public housing authority and is not only Plaintiff's landlord, but it also administers the Section 8 Housing Choice Voucher Program (hereinafter, "HCVP") in the City of Richmond. RRHA initially denied Plaintiff's application for having an "unacceptable police report" without explaining what RRHA found to be "unacceptable" and why any of the offenses on Plaintiff's record rendered Plaintiff

1

ineligible for the HCVP. Moreover, RRHA's reasons for denying Plaintiff's application as stated in the Informal Review decision are both unlawful and unconstitutional. The first reason, a single conviction for simple possession of marijuana, is not lawful grounds for denying Plaintiff's HCVP application under the U.S. Housing Act and HUD regulations. The second reason, Plaintiff's allegedly "providing false statements or information" was not a reason for RRHA's initial denial of Plaintiff's HCVP application and cannot lawfully stand as justification for RRHA's decision to deny her HCVP application. As described below, RRHA's denial of Plaintiff's HCVP application deprived Plaintiff of procedural due process guaranteed by the Fourteenth Amendment to the U.S. Constitution and violated the U.S. Housing Act and HUD regulations governing the HCVP, all actionable against RRHA pursuant to 42 U.S.C. §1983.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action and Defendant pursuant to 28 U.S.C. § 1331, because this case arises under the Constitution and laws of the United States.

3.  The principal events giving rise to the claims stated herein occurred in this district and venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c)(2).

4.  This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. Rule 57.

## PARTIES

5.  Plaintiff, LaFonda Page, is a black female citizen of the United States who resides in Richmond, Virginia along with her six minor children.

6.  Defendant, RRHA, is a public housing agency (hereinafter, "PHA") created in 1940 by the City of Richmond, Virginia (hereinafter, "Richmond") pursuant to § 36-4 of the Code of

2

Virginia. RRHA administers the HCVP in Richmond and has final official policymaking

authority for Richmond in matters relating to the administration of the HCVP in Richmond.

At all relevant times RRHA acted under color of state law.

## GENERAL ALLEGATIONS

### *The Housing Choice Voucher Program & Standards for Denying HCVP Applications*

7. The Housing and Community Development Act of 1974, 42 U.S.C. § 1437f, amended the

    United States Housing Act, 42 U.S.C. § 1437 *et seq.*, and created the HCVP.

8. Under the HCVP, qualifying lower income families and individuals receive a rental subsidy

    that is used to pay a portion of the rent with funds from HUD to the HCV recipient's

    landlord each month. 42 U.S.C. § 1437f (o).

9. The rental subsidy payments are administered by local PHA's established under state law,

    here VA. CODE ANN. § 36-4, and designated by HUD to administer the program in a

    particular geographic area. 42 U.S.C. §1437f(o)(1)(A).

10. Under the HCVP, the HCV recipient pays 30% of the household's adjusted income for rent

    and utilities, and with funds from HUD, the PHA pays the remainder of the rent directly to

    the landlord on the HCV recipient's behalf, subject to the maximum rent limitations

    proscribed by HUD. 42 U.S.C. § 1437f(o)(2)(A).

11. In administering the HCVP, PHAs must act in accordance with HUD regulations and

    directives. *See* 42 U.S.C. § 1437f (o) (defining specific statutory obligations of PHAs in

    administering the HCVP); 24 C.F.R. § 982.52(a) ("The PHA must comply with HUD

    regulations and other HUD requirements for the program. HUD requirements are issued by

    HUD headquarters, as regulations, Federal Register notices or other binding program

    directives.")

12. Both the U.S. Housing Act and HUD regulations require each PHA to adopt a written administrative plan that is consistent with HUD regulations, and the PHA must administer its HCVP in accordance with the PHA's administrative plan. 42 U.S.C. § 1437c-1; 24 C.F.R. § 982.54.

13. The PHA's administrative plan must include reasonable policies that include standards for denying admission into the HCVP, including standards for denying admission based on criminal activity or alcohol abuse in accordance with 24 C.F.R. § 982.553. 24 C.F.R. § 982.54(d)(4)(iii).

14. In accordance with the U.S. Housing Act and HUD regulations, the RRHA promulgated an administrative plan (hereinafter "RRHA Admin. Plan"), which contains, among other things, standards for denying applicants into its HCVP. Relevant excerpts from RRHA's Admin. Plan are attached as Exhibit 1.

15. According to the U.S. Housing Act, 42 U.S.C. §13661(a and b), HUD regulation 24 C.F.R. § 982.553, and RRHA's Admin. Plan, Exh. 1, at 3-24, applicants to HCVP **must** be denied when: (i) any member of the household has been evicted from federally assisted housing in the last 3 years for drug-related criminal activity; (ii) RRHA determines that any household member is currently engaged in the illegal use of a controlled substance or drug, where "currently engaged in" is defined in RRHA's Admin Plan. as "any use of illegal drugs during the previous six months" (Exh. 1, at 3-24); (iii) RRHA has reasonable cause to believe that any household member's current use or pattern of use of illegal drugs, or current abuse or pattern of abuse of alcohol, may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents; or (iv) any household member has ever been convicted of drug-related criminal activity for the production or manufacture of

4

methamphetamine on the premises of federally assisted housing (HUD regulation and

RRHA Admin. Plan only) (hereinafter collectively referred to as "mandatory denials").

16.   According to HUD regulation 24 C.F.R. § 982.553, PHA's **may** prohibit admission of

applicants to the HCVP for other reasons including: (i) drug related criminal activity; (ii)

violent criminal activity; (iii) other criminal activity which may threaten the health, safety,

or right to peaceful enjoyment of the premises by other residents or persons residing in the

immediate vicinity; or (iv) other criminal activity which may threaten the health or safety

of the owner, property management staff, or persons performing a contract administration

function or responsibility on behalf of the PHA (including a PHA employee or

a PHA contractor, subcontractor or agent) (hereinafter collectively referred to as

"permissive denials"). The PHA may establish a period before the admission decision

during which an applicant must not have engaged in the above activities. *Id.*

17.   The U.S. Housing Act, as amended by the Quality Housing and Work Responsibility Act of

1998, 112 Stat 2518 (Oct. 12, 1998), provides that RRHA **may** deny a HCVP application if

"the public housing agency or owner of such housing (as applicable) determines that an

applicant or any member of the applicant's household is or was, during a reasonable time

preceding the date when the applicant household would otherwise be selected for

admission, engaged in any drug-related or violent criminal activity or other criminal

activity which would adversely affect the health, safety, or right to peaceful enjoyment of

the premises by other residents." 42 U.S.C. § 13661(c). The U.S. Housing Act defines

"drug related criminal activity" as the illegal manufacture, sale, distribution, use, or

possession with intent to manufacture, sell, distribute, or use, of a controlled substance (as

such term is defined in section 802 of title 21)." 42 U.S.C. § 1437a(b)(9).

5

18. HUD regulations define "drug related criminal activity" as "the illegal manufacture, sale, distribution, or use of a drug, or the possession of a drug with intent to manufacture, sell, distribute or use the drug." 24 C.F.R. § 5.100. HUD regulations define "violent criminal activity" as "any criminal activity that has as one of its elements the use, attempted use, or threatened use of physical force substantial enough to cause, or be reasonably likely to cause, serious bodily injury or property damage." 24 C.F.R. § 5.100. The term "violent criminal activity" is not defined in the U.S. Housing Act.

19. When deciding whether to deny assistance based on a family's past history, and except in situations of mandatory denials of assistance, HUD regulations direct RRHA to "consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure." 24 C.F.R. § 982.552(c)(2).

20. According to 24 C.F.R. § 982.554(a), the PHA must give a HCVP applicant prompt notice of a decision denying assistance to the applicant and the notice must contain a brief statement of the reasons for the PHA's decision. Also, the notice must also state that the applicant may request an informal review of the decision and must describe how to obtain the informal review. *Id.*

21. According to 24 C.F.R 982.554(b), PHAs "must give an applicant an opportunity for an informal review of the PHA decision denying assistance to the applicant [and t]he administrative plan must state the PHA procedures for conducting an informal review."

6

22. HUD regulations set forth the requirements of the informal review as follows: (i) the review may be conducted by any person or persons designated by the PHA, other than a person who made or approved the decision under review or a subordinate of this person; (ii) the applicant must be given an opportunity to present written or oral objections to the PHA decision; and (iii) the PHA must notify the applicant of the PHA final decision after the informal review, including a brief statement of the reasons for the final decision. *Id.*

23. When a PHA proposes to deny admission for criminal activity as shown by a criminal record, the PHA must provide the subject of the record and the applicant with a copy of the criminal record, and the PHA must give the family an opportunity to dispute the accuracy and relevance of that record, in the informal review process in accordance with § 982.554. 24 C.F.R. §982.553(d)(1).

### *Plaintiff's Application to RRHA's HCVP*

24. Plaintiff has been a tenant of RRHA since 2007, when she moved into RRHA's Afton Court development.

25. In February of 2012, Plaintiff moved to a scattered site public housing unit owned by RRHA located at 103 West 34th Street due to unresolved maintenance issues in her Afton Court home (squirrels stuck in the wall) and the need for a bigger unit for Plaintiff's then newborn child.

26. Plaintiff moved to RRHA's Gilpin Court development in May of 2013, due to several incidents of domestic violence in her home on West 34th Street.

27. Plaintiff moved to RRHA's Fulton Court development in January of 2020, due to unresolved maintenance issues in her Gilpin Court home, described at ¶82, *infra*.

7

28. On April 20, 2015, Plaintiff applied to RRHA for a HCV using RRHA's HCVP's online portal.

29.  On April 29, 2015, Plaintiff received confirmation from RRHA that her application had been received and that she would be notified once she was placed on the HCVP waiting list.

30. On May 15, 2015, Plaintiff received a confirmation letter via email (copy attached as Exhibit 2) that she had been placed on RRHA's HCVP waiting list. This letter explained that Plaintiff would be contacted in accordance with the lottery number randomly assigned to her application, and that RRHA would not accept phone calls regarding where her application stood on the waiting list. Further, the letter informed Plaintiff that she would be asked to "submit necessary documentation to determine [] eligibility for assistance" when her name reached the top of the waiting list.

31. Plaintiff waited two years before checking her spot on the waiting list. In May of 2017, Plaintiff went to RRHA Office at 918 Chamberlayne Ave, Richmond, VA 23220 and was told she was number 7,999 on the waiting list.

32. Thereafter, Plaintiff periodically checked on the status of her application by going to the RRHA office twice a year and requested a status update because RRHA never provided status updates to HCVP applicants.

33. Approximately five years after Plaintiff submitted her HCVP application, RRHA sent Plaintiff an email on September 21, 2020, stating that her name came to the top of the waiting list and she should update her application no later than October 5, 2020, using RRHA's on-line portal.

8

34. On or about September 24, 2020, Plaintiff went to the RRHA on-line portal using her business laptop computer to update her household information to her application as she had given birth to two children during her time on the waiting list (i.e., between 2015-2020). Additionally, Plaintiff attempted to add any new or missing information RRHA needed to process the application.

35. When Plaintiff accessed the on-portal, she saw information from her original 2015 application already prefilled into the on-line application form.

36. On the on-line application form, Plaintiff updated her family size information and proceeded down the checklist of items that RRHA required her to upload to update her original application. Those items included: Social Security cards for three of Plaintiff's children, proof of income (namely, Plaintiff's four most recent paystubs and the last 12-months of child support payments received by Plaintiff), and two recent bank statements.

37. Plaintiff was unable to upload the information and on September 24, 2020, she contacted RRHA Program Manager Brett Brooks by telephone to report the problem she encountered with the online portal. Plaintiff informed Ms. Brooks that she would hand deliver the remaining paperwork by dropping them off in RRHA's office drop box located at 918 Chamberlayne Ave, Richmond, VA 23220.

38. After Plaintiff's telephone conversation with Ms. Brooks, on September 24, 2020, Plaintiff received an email from Ms. Brooks (copy attached as Exhibit 3) stating, "As per our conversation, you may have been selected to be placed on the HCV Program waiting list. Please contact the Tenant Selection Supervisor, Mrs. Fatimah Hargrove, and advise that you have dropped off verification documents (in the dropbox), specifically for the purpose of updating your family information on the waiting list."

39. On October 6, 2020, Plaintiff received an email from RRHA's Program Eligibility Specialist, Danielle McCoy, stating that the application was still missing documents preventing RRHA from processing her application. These items were identical to the items Plaintiff originally attempted to upload on September 24, 2020. Plaintiff's deadline for submitting those documents was extended to October 12, 2020.

40. On October 6, 2020, Plaintiff attempted to re-upload the documents RRHA requested to the on-line portal, but the uploads kept failing. Therefore, Plaintiff took screenshots of the requested documents, printed out the screenshots and delivered them to the RRHA Office, placing them in the lock box at 918 Chamberlayne Ave, Richmond, VA 23220.

41. After delivering the documents to RRHA's lock box, Plaintiff emailed Ms. McCoy on October 6, 2020, (copy attached as Exhibit 4) stating, "I left the documents in a folder in the drop box. Have you received them? Also, will I still need to upload them if so, I will have them send over to you".

42. On October 8, 2020, Plaintiff received a reply email from Ms. McCoy requesting that she upload the remaining documents to the portal.

43. On October 8, 2020, Plaintiff replied to Ms. McCoy (copy attached as Exhibit 5) stating, "I have but it would not let me upload more than one of the pages. So, I just wanted to make sure you had everything you need."

44. On October 8, 2020, Ms. McCoy replied by email to Plaintiff (copy attached as Exhibit 6), stating, "Upload each page as a household document."

45. On October 8, 2020, Plaintiff, again, attempted to upload the documents RRHA requested but could not successfully upload the documents.

10

46.  Plaintiff does not recall electronically signing anything in the on-line application form, including the application itself or the authorization for RRHA to conduct a criminal background check. Nor does Plaintiff recall answering questions in the on-line application form regarding convictions for illegal use or possession of a controlled substance or having been convicted or charged with a misdemeanor.

47.  On October 21, 2020, RRHA informed Plaintiff by letter (copy attached as Exhibit 7) that her HCVP application was denied (hereinafter, "initial denial letter"). In one sentence RRHA explained the reason for its decision to deny Plaintiff's application: "Upon receipt of the criminal history record, RRHA discovered that you have an unacceptable police report and [*sic*] ineligible to reapply until February 5, 2022."

48.  In the initial denial letter, RRHA affirmed that the "unacceptable police report" was the sole reason of denial: "This information is the basis upon which RRHA intends to deny your household's application for admission. Two copies of the criminal history records provided to RRHA are attached." Exh. 7. However, no documents were attached to the initial denial letter.

49.  Plaintiff, through her attorney, informed RRHA that no documents were attached to the initial denial letter and RRHA promptly provided Plaintiff with three documents.

50.  The first document (copy attached as Exhibit 8) was for a misdemeanor trespassing charge in violation of VA. CODE ANN. §18.2-119 that occurred on or about May 12, 2017, at the Walmart located at 7901 Brook Road in Henrico, which is located more than 8 miles from Plaintiff's apartment at Gilpin Court. Plaintiff was convicted of this offense on February 7, 2018.

11

51. The crime of trespassing at a retail store located several miles from Plaintiff's residence is not grounds for either a mandatory denial or a permissive denial of a HCVP application under the U.S. Housing Act, 42 U.S.C. §13661, or HUD regulation 24 C.F.R. § 982.553.

52. The second document (copy attached as Exhibit 9) was for a misdemeanor charge of failure to appear in violation of VA. CODE ANN. §18.2-456, for failing to appear in Henrico General District Court on November 21, 2017. Plaintiff was convicted of this offense on February 7, 2018.

53. The crime of failure to appear is not grounds for either a mandatory denial or permissive denial of a HCVP application under the U.S. Housing Act, 42 U.S.C. §13661, or HUD regulation 24 C.F.R. § 982.553.

54. The third document (copy attached as Exhibit 10) was for a misdemeanor charge of simple possession of marijuana that occurred on November 2, 2018, on Interstate 64 at the intersection of Route 360 in Henrico. Plaintiff was pulled over by Henrico police for a dim taillight. One of the car's occupants was asked to step out of the car and Police found marijuana on her clothes. The car was searched, and Plaintiff was charged with simple possession of marijuana in violation of VA. CODE ANN. § 18.2-250.1. Plaintiff was convicted of this offense on February 5, 2019. The location of this offense was more than 2 miles from Plaintiff's Gilpin Court apartment.

55. The crime of simple possession of marijuana at a location more than two miles from Plaintiff's residence is not grounds for either a mandatory denial or permissive denial of a HCVP application under the U.S. Housing Act, 42 U.S.C. §13661, or HUD regulation 24 C.F.R. § 982.553.

12

56. RRHA's Admin. Plan contains the same mandatory denials that are provided in HUD regulations. However, said Plan provides a list of criminal offenses for permissive denials listed under "Unacceptable Criminal Record" (Exh.1, starting at page 3-26) that neither the U.S. Housing Act nor HUD regulations authorize a PHA to deny a HCVP application, unless the offense also threatened either the health, safety, or right to peaceful enjoyment of the premises by other residents or persons residing in the immediate vicinity; or the health or safety of the owner (here RRHA), property management staff, or persons performing a contract administration function or responsibility on behalf of the PHA. 42 U.S.C. §13661(c); 24 C.F.R. § 982.553(a)(2)(ii)(A)(3 & 4).

57. RRHA's Admin. Plan defines "Unacceptable Criminal Record" as "one wherein the applicant or any member of the household has been convicted of a crime, within the time period specified below, **or** triggers an inquiry that produces an inquiry that produces sufficient evidence that admission of the applicant would jeopardize the health, safety and welfare of the community." Exh. 1, at 3-36 (emphasis added). Thus, RRHA's Admin. Plan contradicts both the U.S. Housing Act, 42 U.S.C. § 13661(c), and HUD regulation 24 C.F.R. § 982.553, by rendering an applicant ineligible for RRHA's HCVP if the applicant merely commits one of the listed crimes regardless of whether the underlying conduct threatened either the health, safety, or right to peaceful enjoyment of the premises by other residents or persons residing in the immediate vicinity; or the health or safety of the owner (here RRHA), property management staff, or persons performing a contract administration function or responsibility on behalf of the PHA.

13

58. The crime "Possession of Drugs" is one of the crimes listed below the definition of "Unacceptable Police Record" and for one offense, the applicant may not reapply for a HCV for a period of 3 years. Exh. 1, at 3-26 to 3-27.

59. The crime "Other Misdemeanors" defined as "convictions for all other types of misdemeanors" is one of the crimes listed below the definition of "Unacceptable Criminal Record." RRHA's Admin. Plan states that for two misdemeanor convictions within the past three years from date of application review, the applicant may not reapply for a HCV for a period of 3 years. Exh. 1, at 3-30. Only two of the three misdemeanor charges on Plaintiff's criminal record occurred during the three-year period from the date of application review: failure to appear and simple possession of marijuana.

60. The initial denial letter sent by RRHA to Plaintiff stated she could not reapply for a HCV until February 5, 2022, which is three years from the date of Plaintiff's conviction of the simple marijuana possession charge. Exh. 7; however, RRHA's Admin, Plan is silent on what date is used to determine the reapply period.

61. Based on the records supplied by RRHA, and the one sentence statement of the reason for RRHA's decision to deny her HCVP application, Plaintiff did not know which of the three criminal records attached to the initial denial letter formed the basis of RRHA's decision to deny her HCVP application or why any of those records rendered her ineligible for the HCVP.

62. None of the three offenses occurred in the immediate vicinity of where Plaintiff lived at the time, nor did any of the three offenses involve other residents, persons residing in the immediate vicinity of Plaintiff's apartment, Defendant's personnel or persons working for Defendant.

14

63. Defendant never alleged that the reason Plaintiff was denied admission into the HVCP was due to any criminal activity on Plaintiff's part that threatened either residents or persons residing in the immediate vicinity of Plaintiff, the owner (here RRHA) or persons working for RRHA.

64. On October 22, 2020, Plaintiff requested an Informal Review of RRHA's decision to deny her HCVP application.

### *The Informal Review*

65. On December 1, 2020, Plaintiff met with RRHA for an Informal Review of its decision denying Plaintiffs HCVP application. What transpired at the Informal Review is summarized in the December 21, 2020, decision (copy attached as Exhibit 11) rendered by the person who conducted the Informal Review, Calandra Trotter, a Housing Compliance Officer at RRHA.

66. RRHA was represented by Ben Titter, RRHA's General Counsel. Exh. 11, at 2. At the Informal Review, RRHA did not present any evidence to support its decision denying Plaintiff's HCVP application for having an "unacceptable police report" other than the initial denial letter and three documents attached thereto. *Id.*

67. Without knowing which of the three criminal records formed the basis of RRHA's decision and why any of those records rendered her ineligible for the HCVP, Plaintiff presented evidence demonstrating her community service and to show she had been rehabilitated of any criminal wrongdoing. That evidence included oral testimony of three witnesses and a letter of recommendation and rehabilitation from one of the three witnesses, Exh. 11, at 2.

68. The first witness to testify was Valarayee Mitchell, the Director of the Office of Community Wealth Building. Ms. Mitchell provided the letter of good character and

15

"reiterate[d] that [Plaintiff] is an asset to her office and city [of Richmond] residents," *Id.* Ms. Mitchell further stated that "[s]he was certain that [Plaintiff] is rehabilitated and would be a great asset to the community." *Id.* Ms. Mitchell has known Plaintiff for five years. *Id.*

69. Plaintiff's second witness was Jenise Justice Brown, co-founder of the Community Justice Network. *Id.* Ms. Brown testified that she has known Plaintiff for three years. *Id.* Ms. Brown "share[d] that [Plaintiff] works in the community, elevates herself and others in the community." *Id.*

70. Plaintiff's third and final witness was Renada Harris, founder of the Mommy's, Bellies and Babies program (hereinafter, "MBB). *Id.* Ms. Harris testified that she has known Plaintiff for 10 years through MBB; that she "has seen [Plaintiff's] interaction with her kids and she would recommend [Plaintiff] for th[e HCV] program." *Id.*

71. After the three witnesses testified, Plaintiff's Counsel provided RRHA with Plaintiff's "record of rehabilitation [] as follows: Breath of Fresh Air, Moms Support Group, and participation in RRHA's Family Self Sufficiency Program." *Id.*

72. In response to the three witnesses' testimony RRHA's General Counsel "polled all witnesses asking if [Plaintiff] ever had a positive drug screening – all said they do not provide those screenings, but have never seen anything in [Plaintiff's] behavior that would indicate a pattern of use." *Id.* RRHA's General Counsel "also highlight[ed] that there are two misdemeanor convictions to consider." *Id.*

73. Lastly, Plaintiff stated "that court fines and costs have been paid and an application for expungement is underway [and t]here was no court ordered pre-trial supervision." *Id.*

74. By letter dated December 21, 2020, Ms. Trotter informed Plaintiff of the outcome of the Informal Review. Exh. 11. Trotter affirmed RRHA's initial decision to deny Plaintiff's HCVP application.

75. Trotter's explanation for affirming the denial of Plaintiff's HCVP application was as follows:

> RRHA has presented valid grounds for denial of assistance, due to an unacceptable criminal record. Although Ms. Page has received letters of support for her participation in community programs (most of which pre-dates the most recent conviction), there is no record of rehabilitation from a professional agency (related to the marijuana conviction).
>
> *Id.,*at 3.

76. Ms. Trottier also based her decision on an issue not stated as grounds in RRHA's initial denial of her HCVP application: "Furthermore, Ms. Page failed to indicate any convictions on her application for housing dated September 24, 2020 - providing false information or statements." Exh. 11, at 3. However, the contents of Plaintiff's application were known to RRHA on or before October 21, 2020, the date RRHA sent Plaintiff the initial denial letter.

77. On January 25, 2021, Plaintiff, through counsel, requested by letter (copy attached as Exhibit 12) that RRHA's Interim Executive Director, Stacey Daniels-Fayson, conduct an Executive Review of Ms. Trotter's decision upholding the denial of Plaintiff's HCVP application, citing three reasons Ms. Trotter's decision should be overturned. Those reasons included: i) the initial denial letter failed to provide sufficient information explaining RRHA's reasons for its action, in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution; ii) the purported grounds for denying Plaintiff's HCVP application were not allowed under HUD regulations; and iii) RRHA disregarded satisfactory evidence of rehabilitation presented by Plaintiff at the Informal Review.

17

78. On January 27, 2021, Ms. Daniels-Fayson replied to Plaintiff's request for Executive
    Review (copy attached as Exhibit 13), stating that "since RRHA's Administrative Plan
    does not provide for Executive Review of this grievance decision, nor does HUD
    regulation require the same, I am unable to grant your request. The decision of the Hearing
    Officer must stand."

### *The Irreparable Harm to Plaintiff Caused by RRHA's Denial of her HCVP Application*

79. Plaintiff has been irreparably harmed by RRHA's decision denying her HCVP application,
    by depriving Plaintiff of her rights to procedural due process guaranteed by the Fourteenth
    Amendment to the Constitution.

80. Further, RRHA's decision to deny Plaintiff's HCVP application has irreparably harmed
    Plaintiff and her family, who are currently living in unsafe and unsanitary housing.

81. For at least the past 21 months, RRHA has been unable to house Plaintiff and her family in
    an apartment in its public housing program that is properly maintained and is safe for her
    and her children to live in.

82. In September of 2019, Plaintiff's contacted RRHA to complain about mold in her
    daughter's bedroom while residing in Gilpin Court. Plaintiff had her children sleep in the
    living room to avoid coughing and to prevent the onset of asthma attacks. At the suggestion
    of her daughter's physician Plaintiff requested that RRHA move her family to a new unit.

83. On January 20, 2020, Plaintiff was transferred to a new unit at RRHA's Fulton
    development due to the mold issues in her Gilpin Court apartment.

84. On October 22, 2020, Plaintiff contacted RRHA to report a hole under a kitchen cabinet
    and another hole in her living room wall where Plaintiff observed mice coming out of.

18

RRHA repaired the hole under the kitchen cabinet but not the hole in the living room wall. RRHA never treated Plaintiff's apartment for the presence of mice.

85. On March 14th, 2021, Plaintiff heard gunshots and firecrackers going off outside of her home. The shock of the noise caused her 15-year-old son to have a panic attack. Plaintiff brought her son to the hospital for evaluation and treatment.

86. Plaintiff is low income and cannot afford market rate apartments that have enough bedrooms to house her and her six children. Plaintiff currently has a four-bedroom apartment and needs at least a four-bedroom to house her family.

87. The only affordable rental options Plaintiff has for herself and her family are either public housing or privately owned housing units that accept HCVs.

88. Plaintiff has been irreparably harmed by RRHA's decision denying her HCVP application, by depriving Plaintiff the opportunity to move out of her current apartment and development using a HCV, which is presently not safe for Plaintiff and her family to live in, and find an apartment outside of RRHA's portfolio using a HCV that is affordable, properly maintained and is safe for her children to live in.

## CAUSES OF ACTION

## Count One: RRHA's Denial of Plaintiff's HCVP Application Violates the Due Process Clause of the Fourteenth Amendment of the US Constitution.

89. Plaintiff re-alleges and incorporates by reference herein paragraphs 1-88 above.

90. Plaintiff has a property interest in the HCV she applied for that is subject to the protections of the Due Process Clause of the Fourteenth Amendment of the US Constitution.

91. The Fourteenth Amendment of the US Constitution requires RRHA to provide denied HCVP applicants with notice that contains sufficient information for the applicant to

understand the basis for the agency's action. The purpose of requiring that notice be given before the Informal Review is to ensure that the tenant is adequately informed of the evidence against her so she can effectively rebut the evidence at the Informal Review.

92. When denying HCVP applicants on the basis of an "Unacceptable Criminal Record," RRHA has a policy to notify the applicant of its decision using a one sentence summary notice that merely recites the ground "Unacceptable Criminal Record" or words to that effect and attaches copies of the record(s) RRHA relied upon, without explaining why the offense(s) contained in the record(s) render the applicant ineligible for the HCVP.

93. Pursuant to that policy, RRHA sent Plaintiff the initial denial letter containing a one sentence summary notice that stated her HCVP application was denied due her having "an unacceptable police report," without explaining what the unacceptable police report was and why that report disqualified her from participating in RRHA's HCVP.

94. Defendant's policy of using one sentence summary notices when initially denying applicants on the basis of an "Unacceptable Criminal Record" or words to that effect, without explaining why the criminal record rendered her ineligible for the HCVP violates Plaintiff's rights to procedural Due Process guaranteed by the Fourteenth Amendment to the United States Constitution, thus, depriving Plaintiff of rights secured by the laws of the United States under color of State law, which is actionable pursuant to 42 U.S.C. § 1983.

95. RRHA has a policy to deny HCVP applicants at the Informal Review stage of the HCVP application process for reasons not stated in the initial denial letter sent to HCVP applicants.

96. Pursuant to that policy, RRHA's Informal Review decision upheld RRHA's initial denial of Plaintiff's HCVP application for a reason not stated in the initial denial letter.

20

97. RRHA's policy of denying HCVP applicants at the Informal Review stage of the HCVP application process for reasons other than those stated in the initial denial letter violates Plaintiff's rights to procedural Due Process guaranteed by the Fourteenth Amendment to the United States Constitution, thus, depriving Plaintiff of rights secured by the laws of the United States under color of State law, which is actionable pursuant to 42 U.S.C. § 1983.

98. As a result of RRHA's denial of her HCVP application, Plaintiff has suffered damages, including humiliation, and emotional distress.

**Count Two: RRHA's denial of Plaintiff's HCVP application violates the U.S. Housing Act.**

99. Plaintiff re-alleges and incorporates by reference herein paragraphs 1-98 above.

100. RRHA's initial denial letter is silent as to the specific criminal offense or offenses that rendered Ms. Page ineligible for the HCVP and fails to explain why any of the criminal records attached to said letter rendered Plaintiff ineligible for the HCVP.

101. Under 42 U.S.C. § 13661(c), RRHA may deny a HCVP application if "the public housing agency or owner of such housing (as applicable) determines that an applicant or any member of the applicant's household is or was, during a reasonable time preceding the date when the applicant household would otherwise be selected for admission, engaged in any drug-related or violent criminal activity or other criminal activity which would adversely affect the health, safety, or right to peaceful enjoyment of the premises by other residents."

102. Plaintiff's drug related conviction was for simple possession of marijuana, an offense that does not qualify as "drug related criminal activity" under 42 U.S.C. § 1437a(b)(9).

103. None of the three offenses attached to the initial denial letter qualifies as violent criminal activity.

21

104. None of the three offenses attached to the initial denial letter affected the health, safety, or right to peaceful enjoyment of the premises by other residents or persons residing in the immediate vicinity, Defendant, or persons working for Defendant, as all three offenses occurred several miles from where Plaintiff resided at the time.

105. In both the initial denial letter and the Informal Review decision dated December 20, 2020, RRHA never alleged nor determined that the criminal offenses committed by Plaintiff would adversely affect the health, safety, or right to peaceful enjoyment of the premises by other residents or persons residing in the immediate vicinity, Defendant, or persons working for Defendant.

106. Defendant has a policy to deny HCVP applicants based on an "Unacceptable Criminal Record," which includes a list of criminal offenses including the criminal offense of simple possession of drugs (here marijuana), regardless of whether the underlying offense adversely affected the health, safety, or right to peaceful enjoyment of the premises by other residents, or the health and safety of Defendant or Defendant's employees.

107. Pursuant to that policy, Defendant denied Plaintiff's HCVP application.

108. Defendant's decision denying Plaintiff's HCVP application violates the U.S. Housing Act, specifically 42 U.S.C. §§ 1437a(b)(9) and 13661(c), thus, depriving Plaintiff of rights secured by the laws of the United States under color of State law, which is actionable pursuant to 42 U.S.C. § 1983.

109. As a result of RRHA's denial of her HCVP application, Plaintiff has suffered damages, including humiliation, and emotional distress.

## **Count Three: RRHA's Denial of Plaintiff's HCVP Application Violated HUD Regulations Governing the HCVP Program.**

110. Plaintiff re-alleges and incorporates by reference herein paragraphs 1-109 above.

111. When denying a HCVP application, Defendant must comply with the procedural and substantive rules for denying an application required by HUD regulations codified at 24 C.F.R. §§ 982.553 and 982.554.

112. Defendant's policy of using a one-sentence summary notice when denying HCVP applicants on the basis of an "Unacceptable Criminal Record" or words to that effect that fails to explain why the underlying criminal offense(s) renders the applicant ineligible for the HCVP violates 24 C.F.R. §982.554.

113. Defendant's policy of denying HCVP applicants at the Informal Review stage of the HCVP application process for reasons other than those stated in the initial denial letter violates 24 C.F.R. §982.554.

114. Defendant's policy of denying HCVP applicants on the basis of an "Unacceptable Criminal Record," which includes the offense of simple possession of drugs even absent any threats posed by the applicant to other residents or persons residing in the immediate vicinity, or to RRHA or persons working for RRHA, violates 24 C.F.R. 982.553.

115. By denying Plaintiff's HCVP application without complying with 24 C.F.R. §§ 982.553 and 982.554, Defendant deprived Plaintiff of rights secured by the laws of the United States under color of State law, which is actionable pursuant to 42 U.S.C. § 1983.

116. As a result of RRHA's denial of her HCVP application, Plaintiff has suffered damages, including humiliation, and emotional distress.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff asks this Honorable Court to award the following relief:

23

1. Declare that Defendant's policy of issuing a one-sentence summary notice when denying HCVP applicants on the basis of an "Unacceptable Criminal Record" or words to that effect that fails to explain why the underlying criminal offense(s) renders the applicant ineligible for the HCVP violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

2. Declare that Defendant's policy of issuing a one-sentence summary notice when denying HCVP applicants on the basis of an "Unacceptable Criminal Record" or words to that effect that fails to explain why the underlying criminal offense(s) renders the applicant ineligible for the HCVP violates 24 C.F.R. §982.554;

3. Declare that Defendant's policy of denying HCVP applicants at the Informal Review stage of the HCVP application process for reasons other than those stated in the initial denial letter violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

4. Declare that Defendant's policy of denying HCVP applicants at the Informal Review stage of the HCVP application process for reasons other than those stated in the initial denial letter violates 24 C.F.R. §982.554;

5. Declare that Defendant's policy of denying HCVP applicants on the basis of an "Unacceptable Criminal Record," which includes the offense of simple possession of drugs, absent a showing that the underlying drug offense threatened other residents or persons residing in the immediate vicinity, RRHA or persons who work for RRHA, violates 42 U.S.C. §§ 1437a(b)(9) and 13361;

6. Declare that Defendant's policy of denying HCVP applicants on the basis of an "Unacceptable Criminal Record," which includes the offense of simple possession of

24

drugs, absent a showing that the underlying drug offense threatened other residents or persons residing in the immediate vicinity, RRHA or persons who work for RRHA violates 24 C.F.R. 982.553;

7.  Issue preliminary and permanent injunctive relief enjoining the Defendant to:

    a.  Approve Plaintiff's HCVP application and issue Plaintiff a HCV forthwith; and

    b.  Cooperate with Plaintiff's efforts to use her HCV to obtain decent, safe and affordable housing for herself and her children.

8.  Pursuant to 28 U.S.C. §2202, issue permanent injunctive relief enjoining Defendant to:

    a.  Cease its policy of issuing a one-sentence summary notice when denying HCVP applicants on the basis of an "Unacceptable Criminal Record" or words to that effect that fails to explain why the underlying criminal offense(s) renders the applicant ineligible for the HCVP, and order RRHA when denying HCVP applicants on said basis to fully explain why the underlying criminal offense(s) renders the applicant ineligible for the HCVP as required by the Due Process Clause of the Fourteenth Amendment to the US Constitution and 24 C.F.R. § 982.554;

    b.  Cease its policy of denying HCVP applicants on the basis of an "Unacceptable Criminal Record," including applicants who have been convicted of the misdemeanor crime of simple possession of drugs, absent a showing that the applicant's underlying offense threatened other residents or persons residing in the immediate vicinity, RRHA or persons who work for RRHA; and to comply with 42 U.S.C. §§ 1437a(b)(9) and 13361(c) and 24 C.F.R. § 982.553 when denying HCVP applicants on the basis of an "Unacceptable Criminal Record";

c. Cease its policy of denying HCVP applicants at the Informal Review stage of the HCVP application process for reasons other than those stated in the initial denial letter; and

9. Award Plaintiff compensatory damages pursuant to 42 U.S.C. § 1983;

10. Award Plaintiff punitive damages pursuant to 42 U.S.C. § 1983;

11. Award Plaintiff her attorney's fees, expert fees, and costs pursuant to 42 U.S.C. § 1988; and

12. Grant such other and further relief to Plaintiff as may be just and equitable under the circumstances.

Respectfully Submitted,
Lafonda Page
By her attorneys,

Daryl Hayott, VSB # 86962
Steven Fischbach, VSB # 94280
**VIRGINIA POVERTY LAW CENTER**
919 East Main Street, Suite 610
Richmond, VA 23219
Telephone: (804)-782-9430
Facsimile:  (804)-649-0974
Email: daryl@vplc.org
Email: steve@vplc.org

26

## VERIFICATION OF COMPLAINT

I, Lafonda Page, state the facts set forth in the foregoing Verified Complaint are true and

accurate to the best of my knowledge and that I am signing this document knowingly and

voluntarily.

_____          7.16.2021
Lafonda Page                                              Date

Commonwealth of Virginia

City of Richmond

> BRITTANY STALLINGS
> Notary Public
> Commonwealth of Virginia
> 7576226
> My Commission Expires 01/31/2023

On this ___ day of June ,2021, before me personally appeared Lafonda Page, proved

through satisfactory evidence of identification which was Virginia Driver's license, and after

she was duly sworn, she declared and acknowledged to me that the facts set forth in the within

Verified Complaint were true to the best of her knowledge and that she signed the above

Verification of Complaint knowingly and voluntarily.

_____
Notary Public: Brittany Stallings
My Commission Expires: January 31,2021
Notary I.D. # 7576226

27