IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LAFONDA PAGE, )
)
        Plaintiff, )
)
v. ) Civil Action No. 3:21-cv-462–HEH
)
RICHMOND REDEVELOPMENT )
AND HOUSING AUTHORITY, )
)
        Defendant. )

**MEMORANDUM OPINION**
**(Granting Motion to Dismiss)**

This matter is before the Court on Richmond Redevelopment and Housing Authority's ("RRHA" or "Defendant") Motion to Dismiss (the "Motion") (ECF No. 12) filed on August 20, 2021. On July 16, 2021, LaFonda Page ("Plaintiff" or "Page") filed a Complaint alleging that Defendant violated her rights guaranteed by the Due Process Clause of the United States Constitution, the United States Housing Act (the "USHA"), and related federal regulations. (Compl., ECF No. 1.) Defendant argues that the Complaint fails to state a claim and should be dismissed. The parties submitted memoranda in support of their respective positions. On October 19, 2021, the Court heard oral argument on the issues, and the Motion is now ripe for review. For the reasons stated herein, the Motion will be granted and the Court will dismiss the Complaint with prejudice.[1]

---

[1] While Plaintiff's claims must be dismissed on legal grounds, the Court is sympathetic to Plaintiff's situation and even hopes Defendant will reconsider Plaintiff's voucher application.

## I. BACKGROUND

As required by Federal Rule of Civil Procedure 12(b)(6), in reviewing a motion to dismiss for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Viewed in this light, the relevant facts are as follows.

The Housing and Community Development Act of 1974 created the Housing Choice Voucher Program (the "HCVP"). 42 U.S.C. § 1437f. The Department of Housing and Urban Development ("HUD") oversees the HCVP generally, but state-run Public Housing Authorities ("PHAs") directly administer the program in their respective local areas. *Id.* RRHA is the PHA that administers the HCVP in the Richmond area. The HCVP allows PHAs to issue Housing Choice Vouchers ("vouchers") to low-income recipients. *Id.* PHAs issue the vouchers, which are effectively rent subsidies, directly to the recipient's landlord, and the landlord then uses the voucher to cover part of the recipient's rent for the month. *Id.* Before administering the HCVP, each PHA, including RRHA, must submit a written administrative plan to HUD for approval. *Id.* § 1437c-1(b–d). The RRHA submitted an Administrative Plan (the "Plan") for the 2020–2021 fiscal year and HUD approved it on December 31, 2020.[2] (Plan at 2, ECF No. 1-2.)

---

[2] Generally, the district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). A court, however, may "consider documents attached to the complaint . . . so long as they are integral to the complaint and authentic." *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Plaintiff relies on RRHA's Administrative Plan, the letter denying her voucher, and other documents attached to her Complaint. The Court, therefore, may consider those attached documents.

On April 20, 2015, Page applied to RRHA for a voucher. (Compl. ¶ 28.) Page received an email on May 15, 2015 stating she was on the HCVP waitlist. (ECF No. 1-4.) Five years later, on September 21, 2020, RRHA notified Page that she was on the top of its waitlist and requested an update of her application. (Compl. ¶ 33.) Page communicated multiple times with RRHA regarding her application and confirmed all required documents were received. (Compl. ¶¶ 34–45.) On October 21, 2020, RRHA informed Page through a written letter that her application was denied because of an "unacceptable police report" and that she was "ineligible to reapply until February 5, 2022." (ECF No. 1-8.) While RRHA did not immediately send Page the police report in question, it later sent her the criminal history records it relied on in denying her application after she requested them through counsel. (Compl. ¶ 49.) Page's criminal history records, which RRHA obtained independently, included three past convictions: (1) a February 7, 2018 conviction for misdemeanor trespassing, (2) a February 7, 2018 conviction for failure to appear in court, and (3) a February 5, 2019 misdemeanor conviction for possession of marijuana. (Compl. ¶¶ 50–54; *see* ECF Nos. 1-9–11.)

Page requested an informal review of her denial, and on December 1, 2020, RRHA conducted a hearing pursuant to Page's request. (Compl. ¶ 64–65.) The informal review process is required by HUD regulations and RRHA's Plan. (*Id.* ¶¶ 20–22.) At the hearing, Page was represented by counsel, introduced evidence, and called witnesses to testify on her behalf. (*Id.* ¶¶ 67–73.) Afterwards, RRHA upheld its initial decision and denied Page's application because of an "unacceptable criminal record." (ECF No. 1-12.) After the hearing, RRHA further noted that Page made false statements to RRHA

3

because she did not disclose her three misdemeanor convictions in her application. (*Id.*) Page requested an additional appeal, but RRHA denied that request because RRHA's Plan does not authorize further review. (ECF No. 1-14.) Page then filed this lawsuit on July 16, 2021.

Plaintiff's Complaint brings three claims under 42 U.S.C. § 1983.[3] Count One alleges that RRHA's review process violated her due process rights under the United States Constitution. Count Two alleges that RRHA's denial of her application violated the statutory provisions of the USHA. Finally, Count Three alleges that RRHA's denial of Page's application violated HUD regulations.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (alteration in original) (quoting *Tobey*, 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when

---

[3] Section 1983 is not "a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979).

4

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 679). A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

Defendant argues that the Court should dismiss Count One because Plaintiff does not have a property right in a voucher for which due process is required or, in the alternative, because RRHA's procedures satisfied due process. (Def.'s Mem. Supp. at 6, ECF No. 13.) To sufficiently allege a violation of due process, the plaintiff must demonstrate that a government action deprived her of life, liberty, or property. *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 79 (4th Cir. 2016). Due process does not create a property interest, "rather the property interest 'must be created or defined by an independent source.'" *Id.* (quoting *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 109 (4th Cir. 2011). When government benefits are the property at issue, an independent source must delineate "more than an abstract need or desire . . . or unilateral expectation of [the benefit]." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972). Instead, the independent source must create a "legitimate claim of entitlement"

5

to the benefit. *Id.*; *see Kerr*, 824 F.3d at 79. An independent source may be state law, rules, or understandings that guarantee benefits for certain individuals. *Id.* at 577.

Plaintiff claims that RRHA's Plan, coupled with HUD regulations and federal statutes, constitute the independent source of her property interest. (Compl. ¶¶ 89–98.) If plaintiff had received a voucher earlier and RRHA terminated it, she would undeniably have a property interest in the voucher. *See Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (holding that termination of previous government benefits requires due process). Unlike the Plaintiff in *Goldberg*, Plaintiff is merely an *applicant* to receive a voucher. However, even applicants have a property interest in potential benefits if the government has little discretion in awarding those benefits once an individual applies. *Mallette v. Arlington Cty. Emps.'s Supplemental Ret. Sys. II*, 91 F.3d 630, 635 (4th Cir. 1996) (listing other cases that based the property interest analysis on the amount of discretion given to decisionmakers); *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (noting that a benefit is not an entitlement if officials have discretion to grant or deny it). Thus, the key question here is what level of discretion RRHA had in denying Plaintiff's voucher.

In *Mallette*, the United States Court of Appeals for the Fourth Circuit focused on "mandatory language" contained in the proposed independent source of the property interest. 91 F.3d at 635. The local ordinance at issue instructed that a person "shall receive" the benefits if they meet the eligibility requirements. *Id.* Thus, the government had little to no discretion to deny benefits, applicants had a property interest in potential benefits, and due process was required. *Id.* Similarly, in this case, RRHA's Plan and

6

HUD regulations leave little leeway for discretion in awarding vouchers. Much of RRHA's Plan lists "mandatory" grounds for denying vouchers. (Plan at 5.) These same mandatory grounds are delineated in HUD regulations. *See* 24 C.F.R. § 982.553(a). HUD regulations also list "permissive prohibitions." *Id.* "The PHA *may* prohibit admission of a household to the program if the PHA determines that any household member . . . has engaged in during a reasonable time before the admission . . . [d]rug-related criminal activity [or] . . . [o]ther criminal activity which may threaten the health, safety, or right to peaceful enjoyment [of others.]" *Id.* § 982.553(a)(ii)(A) (emphasis added). But the RRHA's Plan restricts its own discretion even further.[4] The Plan states that "RRHA *will also deny* assistance to applicants who . . . [have an] Unacceptable Criminal Record." (Plan at 6 (emphasis added).) Among other scenarios not relevant here, an applicant's criminal record is unacceptable if it contains a conviction for possession of drugs within three years of application review. (*Id.* at 7.) RRHA may still grant a voucher if the applicant received rehabilitation for their drug use, but barring that, the Plan strictly requires RRHA to deny the application. (*Id.* at 10.) The Plan and HUD regulations contain mostly "mandatory language" which signals the existence of a property interest in the potential voucher. *Mallette*, 91 F.3d at 635. Thus, RRHA has

---

[4] Defendant argues that it had discretion in what administrative plan it adopted. That may be true, but once RRHA adopted the Plan and HUD approved it, it bound RRHA and eliminated any discretion RRHA had to deny applicants outside of the Plan's provisions.

7

little discretion in determining whether an applicant should receive a voucher after their eligibility is determined.[5]

After establishing a property interest, Plaintiff must sufficiently allege that the government deprived her of that interest without due process of law. *Kerr*, 824 F.3d at 80; *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "At a minimum, the Constitution requires notice and some opportunity to be heard." *Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F. App'x 515, 519 (4th Cir. 2005) (quoting *Mallette*, 91 F.3d at 640). "The nature of the notice and the quality of the hearing are determined by competing interests involved." *Richardson v. Town of Eastover*, 922 F.2d 1152, 1159 (4th Cir. 1991).

Plaintiff argues that RRHA did not provide adequate notice of its decision to deny her a voucher because its denial letter only summarily mentioned a problem with her criminal record and did not explain further.[6] (Compl. ¶¶ 91–92.) While RRHA's notice

---

[5] Defendant cites one in-circuit and three out-of-circuit cases to bolster its argument that Plaintiff does not have a property interest in a potential voucher (Def.'s Mem. Supp. at 8), but all three are distinguishable. In *Eidson v. Pierce*, the landlord had broad discretion within the law to reject applicants for benefits whereas the RRHA has significantly limited discretion in this case. 745 F.2d 453, 463 (7th Cir. 1984). Defendant's other cited cases are similarly different. *Hill v. Grp. Three Hous. Dev. Corp.*, 799 F.2d 385, 389 (8th Cir. 1986) (finding no property interest in part due to landlord's discretion); *Ely v. Mobile Hous. Bd.*, 605 F. App'x 846, 850 (finding that the housing authority had discretion in its decision to a extend housing voucher beyond original term); *Jackson v. Jackson*, 857 F.2d 951, 957 (4th Cir. 1988) (analyzing property interest in applying for food stamps, not housing vouchers).

[6] Plaintiff also argues that RRHA violated the Due Process Clause by denying her application at the informal review hearing for reasons that it did not include in its original denial letter. (Compl. ¶¶ 95–97.) But RRHA's mention of Plaintiff's false statements in her application is only an additional aside and not a reason that it independently relies on in its decision to deny Plaintiff's application. (ECF No. 1-12.)

to Plaintiff was not perfect, it meets the requirements of due process. Notice "must be reasonably calculated to convey information concerning [the] deprivation" of a property interest. *Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 149 (4th Cir. 2014) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). At most, the notice must include the basis for the applicant's denial. *See Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996) (citing *Goldberg*, 397 U.S. at 266–71).

Here, RRHA includes the basis for its decision: Plaintiff had an unacceptable criminal history. While the letter did not include the criminal history records that RRHA relied on in making its decision, RRHA "promptly" sent Plaintiff those records so that she could examine them. (Compl. ¶ 49.) And while the letter does not specify which of Plaintiff's three misdemeanor convictions triggered her denial, Plaintiff had all the necessary tools at her disposal to further investigate and dispute RRHA's decision. She had RRHA's Plan which lists all possible grounds for denial, the denial letter itself, and all relevant criminal records. Courts have not quibbled with the exact contents of denial notices so long as they include reasons for the decision in the broadest sense. *See, e.g., Woods v. Willis*, 515 F. App'x 471, 479 (6th Cir. 2013) (holding that notice was sufficient where government cited fraudulent statement without detailing exact circumstances); *Ervin v. Hous. Auth. of Birmingham Dist.*, 281 F. App'x 938, 939 (11th Cir. 2008) (holding that notice of termination due to drug-use of unspecified family member satisfied due process). RRHA's letter stating its reason for Plaintiff's denial and its later inclusion of her criminal records constitute sufficient notice to satisfy due process.

9

Therefore, the Court will dismiss Count One of the Complaint for failure to state a claim.[7]

Next, Defendant challenges the sufficiency of Counts Two and Three. The Complaint alleges that RRHA violated statutory provisions of the USHA (Count Two) and HUD regulations (Count Three) when it denied Page's voucher application.[8] Plaintiff does not cite any provision of the USHA or HUD regulations allowing her to bring a cause of action in federal court. Instead, she claims that she may sue RRHA for its alleged violations under 42 U.S.C. § 1983. Importantly, the statute also allows a plaintiff to sue for a deprivation of their rights under the "laws" of the United States. But not just any federal law will do. A plaintiff "must assert the violation of a federal *right*, not merely a violation of federal *law*" to state a claim under § 1983. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original). For a statute to create a federal right (1) "Congress must have intended that the provision in question benefit the plaintiff," (2) the provision must not be "so 'vague and amorphous' that its enforcement

---

[7] Plaintiff argues at length that her February 5, 2019 misdemeanor conviction for possession of marijuana does not qualify as drug-related criminal activity under the USHA or HUD regulations. This may or may not be true, but it is not the question currently before this Court nor could Plaintiff directly appeal the substance of RRHA's denial to a federal district court. The question here is only whether Plaintiff received due process in her denial, not whether the denial was correct.

[8] At the hearing conducted on October 19, 2021, Plaintiff argued for the first time that instead of challenging RRHA's actions when it denied her application specifically, she is challenging the Plan's compliance with the USHA and HUD regulations as applied to anyone. Plaintiff cannot amend her Complaint in this way. Even if the Complaint did challenge the Plan instead of RRHA's denial, the USHA does not create a federal right to challenge the Plan. Plaintiff cites to 42 U.S.C. § 1437c-1(i)(4)(B) as proof that such a federal right is created. That statute, however, only allows a legal challenge to an administrative plan where HUD does not approve or disapprove of it within 75 days. *Id.* § 1437c-1(i)(4)(B). Here, HUD approved RRHA's Plan.

would strain judicial competence," and (3) the provision must be phrased in "mandatory, rather than precatory, terms," demonstrating that it creates a "binding obligation on the States." *Id.* at 340–41 (quoting *Wright v. Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 431–32 (1987)).

Plaintiff first asserts in Count Two that 42 U.S.C. § 13661(c) and 42 U.S.C. § 1437a(b)(9), provisions of the USHA, create a federal right. Section 13661(c) reads in relevant part:

> Except as provided in subsections (a) and (b) of this section and in addition to any other authority to screen applicants, in selecting among applicants for admission to the program or to federally assisted housing, if the public housing agency or owner of such housing (as applicable) determines that an applicant or any member of the applicant's household is or was, during a reasonable time preceding the date when the applicant household would otherwise be selected for admission, engaged in any drug-related or violent criminal activity or other criminal activity which would adversely affect the health, safety, or right to peaceful enjoyment of the premises by other residents, the owner, or public housing agency employees, the public housing agency or owner may . . . (1) deny such applicant admission to the program or to federally assisted housing.

§ 1437a(b)(9) more specifically defines "drug-related criminal activity."[9]

Plaintiff argues that these provisions give her the federal right *not* to be denied a housing voucher for other reasons outside the language of the statute. But there is no language in the statute to suggest that. Congress must speak with a clear and unambiguous voice when creating rights enforceable under a statute. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283–85 (2002). Instead of focusing on Plaintiff's rights, the statute

---

[9] The statute defines drug-related criminal activity as "the illegal manufacture, sale, distribution, use, or possession with intent to manufacture, sell, distribute, or use, of a controlled substance (as such term is defined in section 802 of Title 21)." 42 U.S.C. § 1437a(b)(9).

11

focuses on the authority of a PHA to deny applicants on certain grounds. Statutes that focus on the administrative powers of agencies instead of the benefits to certain individuals do not create federal rights enforceable under § 1983. *Gonzaga*, 536 U.S. at 284; *Cannon v. Univ. of Chicago*, 441 U.S. 677, 692 n.13 (1979) ("a statute declarative of a civil right will almost have to be stated in terms of the benefited class").[10]

This Court has also refused to find enforceable federal rights in similar parts of the USHA. *Koroma v. Richmond Redevelopment & Hous. Auth.*, No. 3:09-cv-736, 2010 WL 1704745, at *6 (E.D. Va. Apr. 27, 2010) (finding no federal right in portability provisions of 42 U.S.C. § 1437f because the provisions focused on HUD's duties); *Kirby v. Richmond Redevelopment & Hous. Auth.*, No. 3:04-cv-791, 2005 WL 5864797, at *2 (E.D. Va. Sept. 28, 2005), *aff'd*, 194 F. App'x 105 (4th Cir. 2006) (finding no federal right in 42 U.S.C. § 1437f generally). Without any evidence that Congress intended these sections of the USHA to create a benefit enforceable by Plaintiff, she has no cause of action under § 1983. Thus, the Court will dismiss Count Two for failure to state a claim.

Plaintiff similarly argues in Count Three that two HUD regulations, 24 C.F.R. §§ 982.553 and 982.554 create a federal right enforceable under § 1983.[11] Importantly,

---

[10] Moreover, the statute mentions "other authorit[ies] to screen applicants." 42 U.S.C. § 13661(c). One such authority is 42 § 1437f(o)(B) which allows a PHA "to screen applicants for the [voucher] program in accordance with such requirements as the Secretary [of HUD] may establish." A statute cannot create a right not to be denied a voucher when the clear language of the statute specifically contemplates other grounds for denial.

[11] 24 C.F.R. §§ 982.553(ii)(A) states in relevant part that "The PHA may prohibit admission of a household to the program if the PHA determines that any household member . . . has engaged in during a reasonable time before the admission . . . [d]rug-related criminal activity [or] . . . [o]ther criminal activity which may threaten the health, safety, or right to peaceful enjoyment [of others.]" 24 C.F.R. §§ 982.554 states that "The PHA must give an applicant for participation

"language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).[12] Thus, the HUD regulations may only create a federal right if Congress unambiguously intended the authorizing statute to create that right. *See Gonzaga*, 536 U.S. 273, 283 (2002). HUD cites 42 U.S.C. § 1437f as the authorizing statute for the regulations at issue, 24 C.F.R. §§ 982.553–554. As noted above, this Court has previously found no enforceable rights in § 1437f. *Koroma*, 2010 WL 1704745, at *6; *Kirby*, 2005 WL 5864797, at *2. Federal Courts of Appeals have similarly found nothing in the statute creating federal rights. *Perry v. Hous. Auth. of Charleston*, 664 F.2d 1210, 1213 (4th Cir. 1981) (finding no right to sue private landlords); *Hill v. Richardson*, 7 F.3d 656, 658 (7th Cir. 1993) (finding no right of action in § 1437f generally); *Banks v. Dallas Hous. Auth.*, 271 F.3d 605, 609–10 (5th Cir. 2001) (finding no right to sanitary conditions). 42 U.S.C. § 1437f only describes the authority of HUD to create programs for housing assistance. Instead of speaking of benefits or rights that individuals like Plaintiff are entitled to, the statute talks of actions that HUD "may" or "shall" take. *Id.* § 1437f. This is not the type of language that exhibits Congressional intent to create a federal right in the Plaintiff.

---

prompt notice of a decision denying assistance to the applicant. The notice must contain a brief statement of the reasons for the PHA decision. The notice must also state that the applicant may request an informal review of the decision and must describe how to obtain the informal review."

[12] While *Sandoval* involved the creation of a private cause of action independent of any other statute, courts have used this same principle to limit the creation of federal rights under § 1983. *Kalan v. Health Ctr. Comm'n of Orange Cty., Va.*, 198 F. Supp. 3d 636, 644 (W.D. Va. 2016).

Plaintiff cites *Wright* as evidence that the USHA or HUD regulations create federal rights enforceable under § 1983. 479 U.S. 418. However, *Wright* is easily distinguishable for two reasons. First, the case analyzed 42 U.S.C. § 1437a, a provision of the USHA that Plaintiff does not argue is relevant to her situation here. One section of a statute creating a private cause of action does not mean an adjacent statute must also create an enforceable right. *See Blessing*, 520 U.S. at 342; *Sandoval*, 532 U.S. at 276–77 (holding that while § 601 of Title VI creates a private cause of action, § 602 does not). Second, the Supreme Court has significantly narrowed the standard for finding a right in federal statutes since *Wright*. *See Gonzaga*, 536 U.S. at 283. Thus, because the authorizing statute shows no Congressional intent to create a federal right, the HUD regulations also cannot create any enforceable right. The Court will dismiss Count Three for failure to state a claim.

Lastly, Plaintiff asks the Court for a declaratory judgment. A declaratory judgment is "unavailable in situations where . . . claims and rights asserted have fully matured, and the alleged wrongs have already been suffered." *Hanback v. DRHI, Inc.*, 94 F. Supp. 3d 753, 758 (E.D. Va. 2015), *aff'd*, 647 F. App'x 207 (4th Cir. 2016). Plaintiff's claims and rights asserted here have certainly matured. Her application for a voucher was already denied. Thus, to the extent that Plaintiff also requests declaratory relief, the Court will dismiss Plaintiff's Complaint. *See AvePoint, Inc. v. Knickerbocker*, 475 F.

Supp. 3d 483, 488 (E.D. Va. 2020) (granting a motion to dismiss because declaratory judgment is an inappropriate remedy).

## IV. CONCLUSION

In sum, the Court finds that Plaintiff's Complaint fails to state a claim for relief. Accordingly, Defendant's Motion to Dismiss (ECF No. 12) will be granted and the Complaint will be dismissed with prejudice. Furthermore, the Court will deny Plaintiff's Motion for a Preliminary or Permanent Injunction (ECF No. 4) as moot.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Nov. 10, 2021
Richmond, Virginia